UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
STAR AUTO SALES OF BAYSIDE, INC. (d/b/a                    Case No.: 23-04912(NRM)(RML)
STAR TOYOTA OF BAYSIDE), STAR AUTO
SALES OF QUEENS, LLC (d/b/a STAR SUBARU),
STAR HYUNDAI LLC (d/b/a STAR HYUNDAI),
STAR NISSAN, INC (d/b/a STAR NISSAN),
METRO CHRYSLER PLYMOUTH INC.
(d/b/a STAR CHRYSLER JEEP DODGE),
STAR AUTO SALES OF QUEENS COUNTY LLC
(d/b/a STAR FIAT), and STAR AUTO SALES OF
QUEENS VILLAGE LLC (d/b/a STAR MITSUBISHI),

                            Plaintiffs,

            -against-

ROSENFIELD & COMPANY, PLLC,

                            Defendant.
---------------------------------------------------------------X


PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION
TO TRANSFER, OR IN THE ALTERNATIVE, TO DISMISS THE AMENDED COMPLAINT


                                MILMAN LABUDA LAW GROUP PLLC

                                Jamie S. Felsen, Esq.
                                *Attorneys for Plaintiffs*
                                3000 Marcus Ave., Suite 3W8
                                Lake Success, NY 11042
                                (516) 328-8899
                                jamie@mllaborlaw.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

FACTS ...................................................................................................................... 2

STANDARD .............................................................................................................. 5

ARGUMENT ............................................................................................................. 6

POINT I ..................................................................................................................... 6

    **THIS CASE SHOULD NOT BE TRANSFERRED TO THE MIDDLE
DISTRICT OF FLORIDA** ................................................................................ 6

POINT II ................................................................................................................. 13

    **ROSENFIELD'S MOTION TO DISMISS SHOULD BE DENIED** .............

CONCLUSION ....................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*131 Heartland Blvd. Corp. v C.J. Jon Corp.*, 82 A.D.3d 1188 (2d Dept. 2011) ........................ 11

*AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 135 (2d Cir. 2018) .............................. 15

*Alitalia Linee Aeree Italiane v. Airline Tariff Publ. Co.*, 580 F. Supp. 2d 285, 290 (S.D.N.Y. 2008) ................................................................................................................................... 15

*Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) ...................................................................................................................... 8

*Applied Energetics, Inc. v. Newoak Capital Mkts., LLC*, 645 F.3d 522 (2d Cir. July 13, 2011).. 10

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)...................................... 6

Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).......... 6

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523 (2d Cir. March 18, 1985)................. 14

*Bon Jour Group, Ltd. v. Elan Polo, Inc.*, 1997 U.S. Dist. LEXIS 10283, *6-7 (S.D.N.Y. July 16, 1997) ................................................................................................................................... 9

*Brash v Richards*, 195 AD3d 582 (2d Dept. 2021)........................................................................ 18

*Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1031 (2d Cir. 1996)................................. 15

*Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 107-108 (S.D.N.Y. Jan. 3, 2007) .......................................................................................................................................... 11

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).................................................. 5

*Diesel Pops S.R.I. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580(HB), 2008 U.S. Dist. LEXIS 92988, 2008 WL 4833001, at 15 (S.D.N.Y. Nov. 5, 2008)........................................... 8

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017) ................................................................................................................................... 5

*Estate of Leventhal v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 129402 (S.D.N.Y. Sept. 25, 2015) ............................................................................................................................ 18

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013) .................................................................................................................... 5

*Excess Ins. Co. v. Factory Mut. Ins. Co.*, 2 A.P.3d 150, 151, 769 N.Y.S.2d 487 (1st Dep't 2003) .......................................................................................................................................... 15

*Finance One Pub. Co. Ltd., v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005) .......................................................................................................................................... 15

Foy v State, 71 Misc 3d 605 (Ct Cl. 2021) .................................................................................... 18

*Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 220 (2d Cir. Nov. 15, 2013).... 16

*Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 715 N.E.2d 482, 485, 693 N.Y.S.2d 479 (N.Y. 1999) ........................................................................................................................ 16

*Globalnet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006) ......... 14

*Haag v. Barnes*, 9 N.Y. 2d 554, 559-60, 175 N.E.2d 441, 216 N.Y.S. 2d 65 (1961) ................. 13

*Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) .................................... 13

*HomeoPet LLC v. Speed Lab., Inc.*, 2014 U.S. Dist. LEXIS 79746, *53-54 (E.D.N.Y. June 11, 2014) .............................................................................................................................. 6, 11

*IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ................................................ 14

*In re Rationis Enters., Inc. of Pan.*, 1999 U.S. Dist. LEXIS 34 (S.D.N.Y. Jan. 7, 1999) ............. 8

*JM Smith Corp. v. Astrazeneca Pharms. L P*, 2020 U.S. Dist. LEXIS 143746 (S.D.N.Y. Aug. 11, 2020) .............................................................................................................................. 12

*John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289 (S.D.N.Y. Oct. 13, 1987) ............ 7

*Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 566-67 (S.D.N.Y. 2013)............................................................................................. 8
*Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F. Supp. 1014 (S.D.N.Y. Oct. 26, 1984)................ 13
*Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014) ...................... 6
*Licensed Practical Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 410 (S.D.N.Y. 2000) ......................................................................... 7
*Light v. Taylor*, 2007 U.S. Dist. LEXIS 5855 (S.D.N.Y. Jan. 29, 2007)........................................ 9
*Matter of 701 Riv. St. Assoc. LLC*, 72 Misc 3d 302 (N.Y. Sup Ct. 2021) .................................. 18
*Melville v. HOP Energy, LLC*, 2023 U.S. Dist. LEXIS 52101 (S.D.N.Y. March 27, 2023)........ 15
*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) ..... 5
*Philips Credit Corp. v. Regent Health Group, Inc.*, 953 F.Supp. 482, 502 (S.D.N.Y. 1997) ...... 15
*RLI Ins. Co. v. AST Eng'g Corp.*, 2022 U.S. App. LEXIS 931, *4-5 (2d Cir. Jan. 12. 2022) ...... 13
*Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) ............................................. 15
*Rosenfield v. Trachtenberg, et al.*, 2022 U.S. Dist. LEXIS 228091 (S.D.N.Y. Dec. 19, 2022)..... 4
*S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F. Supp. 1014 (S.D.N.Y. Oct. 26, 1984)...........13
*Seneca Ins. Co. v. Henrietta Oil Co.*, 2003 U.S. Dist. LEXIS 1608 (S.D.N.Y. Feb. 4, 2003) ....... 9
*Starkey v. G Adventures, Inc.*, 796 F.3d 193, 196 (2d Cir. 2015)................................................... 7
*Stuart v. American Cyanamid Co.*, 158 F.3d 622 (2d Cir. Sept. 21, 1998) .......................... 14, 16
*U.S. Nonwovens Corp. v. Pack Line Corp.*, 48 Misc. 3d 211, 4 N.Y.S.3d 868, 872 (N.Y. Sup. Ct. 2015) ......................................................................................................................................... 15
*Wilson v Town of Ulster*, 120CV104TJMDJS, 2021 WL 1946485 (N.D.N.Y. May 14, 2021)... 18

## Statutes

§ 1404(a) ................................................................................................................................ passim
28 U.S.C. § 1391(b)(2)……………………………………………………………………………4, 5
28 U.S.C. § 1404(a) ........................................................................................................... 1, 5, 11
C.P.L.R. § 202............................................................................................................................ 16
CPLR §§ 214 and 203(e) ........................................................................................................ 2, 17
CPLR 203(e) ......................................................................................................................... 17, 18
Fed. R. Civ. Proc. 12(b)(6) .......................................................................................................... 6
Restatement (Second) of Conflicts of Law § 187 ...................................................................... 13

## PRELIMINARY STATEMENT

The claims of Plaintiffs ("Star") against Defendant, Rosenfield & Company, PLLC ("Rosenfield") should proceed in this court (or in the SDNY) and should not be transferred to the Middle District of Florida.  Rosenfield has not met its burden of making out a strong case for transfer to the Middle District of Florida.

Rosenfield's argument that the forum selection clause contained in only one of the three (3) contracts under which Star has brought claims against Rosenfield for breach of contract (the 4/20/17 Contract) warrants transfer to the Middle District of Florida must be rejected for several reasons.

First, it was not reasonably communicated to Star that Star's claims are required to be filed in the Middle District of Florida.  Second, Rosenfield waived the forum selection clause by previously commencing a lawsuit against Star in the SDNY.  Third, the factors courts consider under 28 U.S.C. § 1404(a), which Rosenfield failed to address, weigh decidedly in favor of venue being most appropriate in this court (or the SDNY).  Fourth, the 4/20/17 Contract and all obligations and provisions therein, including provisions for choice of law and choice of venue, terminated on May 24, 2017, when Star and Rosenfield entered into an oral/implied agreement that superseded the 4/20/17 Contract.  Fifth, Star's fraud claim and the breach of contract claims under the 5/25/17 and 3/8/19 Contracts are not covered by the forum selection clause.   Sixth, courts must transfer the entire action, not individual claims, and all of the § 1404(a) factors weigh heavily against transferring venue to the Middle District of Florida.

Moreover, Rosenfield's motion to dismiss should be denied.  Contrary to Rosenfield's argument, even though the 4/20/17 Contract contains a Florida choice of law provision, New York law applies because New York has the most significant contacts.  Moreover, because jurisdiction

rests upon diversity of citizenship, the Court must apply the New York choice-of-law rules and statutes of limitations.  There is no actual conflict between the laws of Florida and New York.  Even if there are substantive differences that could have a significant impact on the outcome of the case (which there are not), as discussed *supra*, New York has the greatest interest in the breach of contract claims.

With regard to the fraud claim, the law where the locus of the tort is, which is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated, applies.

Accordingly, New York law applies to all of the claims.

Under New York law, Star's claims are timely, contrary to Rosenfield's arguments.  Even if, as Rosenfield argues, Star's breach of contract claims related to the 4/20/17 Contract and the 5/25/17 Contract and Star's fraud claim sound in negligence (which is not the case), Star timely commenced this action within the three (3) year statute of limitations governing negligence claims under CPLR §§ 214 and 203(e).

Moreover, Star's fraud claim is sufficiently pled.  Star alleges, with particularity, ten (10) different fraudulent statements made by Rosenfield.  Star also alleges Rosenfield intentionally made material misrepresentations, provides the specific details of the misrepresentations and the dates on which they were made, and alleges that the misrepresentations were made in order to defraud or mislead Star.  Star also alleges it relied on these statements and paid Rosenfield for its work and filed lawsuits in reliance on Rosenfield's misrepresentations.  Star also alleges that Rosenfield benefitted by making these misrepresentations as it was paid substantial fees for its work.  These allegations are sufficient.

**<u>FACTS</u>**

2

In or around April 20, 2017, Star entered into an agreement with Rosenfield under which Rosenfield agreed to provide forensic accounting services to Star to support Star's anticipated civil litigation against Star's former employees at a flat fee of $35,000 per week for a maximum of 2 months ("4/20/17 Contract").  (See ECF Doc. No. 10, AC ¶¶ 28-32).  The 4/20/17 Contract contains a forum selection clause requiring "this engagement and any actions that may arise" to be litigated in the district where Rosenfield's headquarters are located (which location is not defined in the 4/20/17 contract).  *See* Scott M. Kessler Decl. Exh. 2.  The 4/20/17 Contract and all obligations and provisions therein, including provisions for choice of law and choice of venue, terminated on May 24, 2017.  (AC ¶ 37).

In or around May 25, 2017, Rosenfield and Star entered into an oral/implied agreement under which Rosenfield would provide forensic accounting services to Star to support Star's anticipated civil litigation against Star Auto Group's former employees on an hourly basis. ("5/25/17 Contract") (AC ¶¶ 38-39).  In the 5/25/17 Contract, Rosenfield and Star did not agree upon any other terms, including choice of law or choice of venue.  (AC ¶ 40).  On April 17, 2020, Star terminated the 5/25/17 Contract.  (AC ¶ 43).

In or around March 8, 2019, Star Auto Group entered into another agreement with Rosenfield (the "3/8/19 Contract").  (AC ¶ 59).  Under the 3/8/19 Contract, which states that New York law applies, Star engaged Rosenfield to provide "investigation, prosecution, litigation support services, and expert testimony inclusive of working with Milman Labuda Law Group PLLC […] with respect to any and all schemes committed or participated [in] by former employees [of Star Auto Group] including Douglas Filardo, Francine Filardo, Vivian Karouzakis, Despina Theocharis and Carmen Jones, inclusive of their families, related persons, and/or entities."  (AC ¶ 61).

On April 30, 2021, Rosenfield commenced a lawsuit against Star in the SDNY against Star ("SDNY Action") (AC ¶ 10; SDNY case no. 21-cv-03858, ECF Doc. No. 1).  Notwithstanding Rosenfield commencing the SDNY Action, Rosenfield moves in the instant action to transfer venue to the Middle District of Florida.

Star is comprised of New York corporations and limited liability entities based in Queens, New York, Rosenfield has a New York City office which is less than fifteen (15) miles from Star's offices[1] and utilized its New York based employees to perform the work under the contracts, and all work under the contracts was performed in New York City.  (AC ¶¶ 2-9, 24-26).  Accordingly, all witnesses and documents are located in New York (in the EDNY and SDNY).  Indeed, Rosenfield conceded all of this in the SDNY Action wherein it alleged:

> Venue is proper in the Southern District of New York based on 28 U.S.C. §1391(b)(2) because a substantial part of the events and/or omissions giving rise to this action occurred in this district. Specifically, all of the directives on how to proceed with the litigation support work at issue in this case were issued to R&Co from this district, and R&Co employees based out of the company's New York office, located in this district performed the litigation support services work.

*See* SDNY case no. 21-cv-03858, ECF Doc. No. 1, ¶ 4.

The SDNY action was dismissed on December 19, 2022 solely due to lack of complete diversity.  *See Rosenfield v. Trachtenberg, et al.*, 2022 U.S. Dist. LEXIS 228091 (S.D.N.Y. Dec. 19, 2022).  On May 25, 2023, Star commenced the instant action in New York Supreme Court, Queens Court asserting the same counterclaims it asserted in the SDNY Action that Rosenfield commenced against it, and Rosenfield subsequently removed the case to this Court.  (AC ¶ 11-12, 14).

---

[1] *See* https://www.google.com/maps/dir/20602+Northern+Blvd,+Queens,+NY/14+penn+plaza/@40.7391576,-74.0412671,11z/am=t/data=!3m2!4b1!5s0x89c259aaed5da00f:0x27c7231f3f802a26!4m12!4m12!1m5!1m1!1s0x89c261dc7b90b2bb:0x76059231ad430150!2m2!1d-73.7766976!2d40.7580567!1m5!1m1!1s0x89c259add3413553:0x3c4b4edecb50d407!2m2!1d-73.9917449!2d40.7518157?entry=ttu

## STANDARD

### A.  Motion to Transfer Venue

A civil action may be brought in "a judicial district in which a substantial part of the events

or omissions giving rise to the claim occurred, or a substantial part of property that is the subject

of the action is situated."  28 U.S.C. § 1391(b)(2).

A court may transfer a civil action to any other district where the suit may have been

initially brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28

U.S.C. § 1404(a).  The party requesting a change of venue carries the "burden of making out a

strong case for transfer." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102,

114 (2d Cir. 2010) (internal quotation marks omitted).

To decide whether transfer under § 1404(a) is warranted, courts undertake a two-step

inquiry. *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 407

(S.D.N.Y. 2017).  The Court determines "first, whether the action could have been brought in the

transferee district and, if yes, whether transfer would be an appropriate exercise of the Court's

discretion." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735,

743 (S.D.N.Y. 2013) (internal quotation marks omitted).

"District courts have broad discretion in making determinations of convenience under §

1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H.

Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).  Some of the factors the Court should

consider are "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the

location of relevant documents and the relative ease of access to sources of proof; (4) the locus of

operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6)

the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight

accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Everlast*, 928 F. Supp. 2d at 743. The convenience of the witnesses and the locus of the operative facts of the case are typically regarded as the primary factors. *See Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014).

**B. Motion to Dismiss**

A motion to dismiss under Fed. R. Civ. Proc. 12(b)(6) challenges the legal sufficiency of a complaint. Fed. R. Civ. Proc. 12(b)(6). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

**ARGUMENT**

**POINT I**

**THIS CASE SHOULD NOT BE TRANSFERRED TO THE MIDDLE DISTRICT OF FLORIDA**

Rosenfield argues that a forum selection clause in the 4/20/17 Contract warrants transfer to the Middle District of Florida of this entire action – including breach of contract claims related to the 5/25/17 Contract and 3/8/19 Contract which contain no forum selection clause, and a fraud claim. Rosenfield's argument must be rejected for several reasons.

**A. The 4/20/17 Contract**

**i. The Forum Selection Clause in the 4/20/17 Does Not Explicitly Require Star to Litigate in the Middle District of Florida**

The presence of a forum selection clause is only one factor—"albeit a significant one"—in the transfer analysis of the various factors under § 1404(a). *See HomeoPet LLC v. Speed Lab., Inc.*, 2014 U.S. Dist. LEXIS 79746, *53 (E.D.N.Y. June 11, 2014).

6

Courts in this Circuit apply a multi-factor test to determine whether to enforce a forum selection clause, weighing "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any . . . dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 196 (2d Cir. 2015).

Here, the 4/20/17 Contract states "[t]his engagement and any actions that may arise shall … be brought in the judicial districts in which the headquarters of Rosenfield and Company, PLLC is located." The 4/20/17 contract does not identify the Middle District of Florida as the place where Rosenfield's headquarters is located. Therefore, it was not reasonably communicated to Star that claims are required to be filed in the Middle District of Florida. Accordingly, the forum selection clause must be construed against Rosenfield, the party who drafted it. *See John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 289 (S.D.N.Y. Oct. 13, 1987) ("If the forum selection clause is ambiguous in that it is susceptible of two reasonable meanings, it will be construed against the party who drafted it.")

### ii. Rosenfield Waived The Forum Selection Clause By Choosing to Litigate With Star in the SDNY

Even assuming *arguendo* that Rosenfield reasonably communicated to Star that Star would be required sue Rosenfield in the Middle District of Florida, Rosenfield waived the forum selection clause when, on April 30, 2021, Rosenfield commenced the SDNY Action against Star.

A party waives enforcement of a forum selection clause when the party invoking it has taken actions inconsistent with it. *See Licensed Practical Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393, 410 (S.D.N.Y. 2000) ("By bringing suit in New York in violation of the forum-selection clause, plaintiff undoubtedly

has waived any right to insist on its enforcement."); *Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) ("A party has waived a contractual right when it voluntarily and intentionally abandons the enforcement of that right"); *In re Rationis Enters., Inc. of Pan.*, 1999 U.S. Dist. LEXIS 34 (S.D.N.Y. Jan. 7, 1999) ("after filing its own claims in the limitation proceeding, Hyundai cannot now avoid the Court's jurisdiction"); *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 566-67 (S.D.N.Y. 2013); *Diesel Pops S.R.I. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580(HB), 2008 U.S. Dist. LEXIS 92988, 2008 WL 4833001, at 15 (S.D.N.Y. Nov. 5, 2008).

By commencing a lawsuit against Star in the SDNY, and not in the Middle District of Florida, Rosenfield has waived the forum selection clause contained in the 4/20/17 Contract.

### iii. Even If the Forum Selection Clause in the 4/20/17 Contract is Binding, the § 1404(a) Factors Militate Against Transfer to the Middle District of Florida

The factors courts consider under § 1404(a), which Rosenfield failed to address, weigh strongly in favor of venue being most appropriate in this court (or the SDNY), and certainly not in the Middle District of Florida. Star is comprised of New York corporations and limited liability entities based in Queens, New York, Rosenfield has a New York office which is less than fifteen (15) miles from Star's offices and exclusively utilized its New York based employees to perform the work under the contracts in New York. Moreover, all witnesses and documents are located in New York (in the EDNY and SDNY). The locus of operative facts are in EDNY and SDNY. This court is familiar with New York law which applies to Star's claims. In the interests of justice, because of all of the foregoing facts, this case should be adjudicated in New York (in this court or in the SDNY). Notably, even where a valid forum selection clause exists, courts have refused to transfer a case when the contracted forum has absolutely no connection to the claims. *See Seneca*

*Ins. Co. v. Henrietta Oil Co.*, 2003 U.S. Dist. LEXIS 1608 (S.D.N.Y. Feb. 4, 2003) (forum selection clause not enforced where significant contacts did not occur in the selected forum).

**B. The Forum Selection Clause in the 4/20/17 Contract Does Not Cover Star's Other Claims**

Rosenfield argues that a provision in the 4/20/17 Contract stating "[t]his engagement and any actions that may arise shall … be brought in the judicial districts in which the headquarters of Rosenfield and Company, PLLC is located" subjects all claims, including other breach of contract claims and tort claims, to the forum selection clause.  However, the reference to "[t]his engagement and any actions that may arise" can reasonably be interpreted to refer only to breach of contract claims related to "this engagement [agreement]".  Accordingly, Star's claims for breach of the 5/25/17 and 3/9/19 Contracts and its fraud claim are not covered by the forum selection clause. *See Bon Jour Group, Ltd. v. Elan Polo, Inc.*, 1997 U.S. Dist. LEXIS 10283, *6-7 (S.D.N.Y. July 16, 1997) (holding that fraudulent inducement claim was not covered by forum selection clause applicable to "litigation between the parties concerning the alleged breach of this agreement or the meaning, effect, application and/or interpretation of its terms"); *Light v. Taylor*, 2007 U.S. Dist. LEXIS 5855 (S.D.N.Y. Jan. 29, 2007) (holding forum selection clause stating "[a]ny dispute regarding this Agreement shall be governed by the laws of the State of New York . . . . The parties agree to accept the exclusive jurisdiction of the state and federal courts located in New York, USA" was narrow in focus and did not encompass independent copyright claims).

**C. The 5/25/17 Contract Does Not Contain a Forum Selection Clause and the Forum Selection Clause in the 4/20/17 Contract Does Not Apply to the 5/25/17 Contract**

The 4/20/17 Contract and all obligations and provisions therein, including provisions for choice of law and choice of venue, terminated on May 24, 2017.  (AC ¶ 37).  On May 25, 2017, the parties entered into a new oral/implied contract which continued for almost three (3) years

(5/25/17 Contract").  (AC ¶¶ 38, 43).  Under the 5/25/17 Contract, Rosenfield was required to provide forensic accounting services to Star to support Star's anticipated civil litigation against Star's former employees and the services would be billed by Rosenfield on an hourly basis.  No other terms, such as choice of law and choice of venue, were agreed to in the 5/25/17 Contract. (AC ¶ 40).

Rosenfield argues that Star's allegation in the SDNY Action that the 4/20/17 Contract remained effective until April 17, 2020 thereby refuting the existence of the 5/25/17 Contract (Rosenfield MOL at 4).  However, Rosenfield omits the fact that, on October 8, 2021, Star amended its counterclaims against Rosenfield in the SDNY Action to add an allegation that, in or around May 25, 2017, Rosenfield and Star terminated the 4/20/17 Contract and entered into an oral/implied agreement which continued for almost three (3) years.  (SDNY case no. 21-cv-03858, Doc. No. 73 ¶ 29).

Rosenfield, nevertheless, argues that the Amended Complaint fails to plausibly allege that the parties' intent was for the 5/25/17 Contract to be interpreted without regard to the forum selection and choice of law provisions in the 4/20/17 Contract.  Rosenfield fails to cite any authority for this proposition that Star is bound by all of the terms from the 4/20/17 Contract that are not covered in the 5/25/17 Contract, including the forum selection and choice of law provisions because Star did not allege that the parties' intent was for the forum selection and choice of law provisions in the 4/20/17 Contract to apply to the 5/25/17 Contract.  No such authority exists for this proposition.  Indeed, under New York law, "[i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract."  *Applied Energetics, Inc. v. Newoak Capital Mkts., LLC*, 645 F.3d 522 (2d Cir. July 13, 2011).  Thus, a forum selection clause under a terminated contract does not apply to a new contract.  *See HomeoPet LLC v. Speed Lab., Inc.*, 2014

U.S. Dist. LEXIS 79746, *54 (E.D.N.Y. June 11, 2014)*; Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 107-108 (S.D.N.Y. Jan. 3, 2007).[2]

Even assuming *arguendo* that an examination into the parties' intent is relevant to determining if the forum selection and choice of law provisions in the 4/20/17 Contract apply to the 5/25/17 Contract, this is a factual issue for which discovery is required.

With regard to the 5/25/17 Contract and the 3/8/19 Contract, Rosenfield does not meet its burden in meeting the two-step inquiry under § 1404(a).  Rosenfield has not established that the claims regarding the 5/25/17 Contract and the 3/8/19 Contract could have been brought in the Middle District of Florida.  Nor does Rosenfield establish that the Middle District of Florida would be an appropriate exercise of the Court's discretion under the various factors that courts consider with respect to any of the claims.  Indeed, Rosenfield does not even address any of the numerous factors courts must consider, including (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.  Rosenfield's failure to address these factors is fatal to its motion to transfer venue under 28 U.S.C. § 1404(a).

---

[2] Rosenfield cites *131 Heartland Blvd. Corp. v C.J. Jon Corp.*, 82 A.D.3d 1188 (2d Dept. 2011), where the contract and the lease modification agreement dealt with the same subject matter, the lease modification agreement was not supported by independent consideration, the two documents served the same purpose and referred to each other, and the evidence showed that the parties intended the two documents to be interdependent and to be read together.  These facts are readily distinguishable from the allegations here where the 4/20/17 Contract covered services at $35,000.00 per week and was limited to a 2-month term (AC ¶¶ 30, 32) and the 5/25/17 Contract covered services on an hourly basis for an undetermined period.  (AC ¶ 39).

In any event, all of these factors weigh heavily in favor of venue being most appropriate in this court (or the SDNY). Star is comprised of New York corporations and limited liability entities based in Queens, New York, Rosenfield has a New York office which is less than fifteen (15) miles from Star's offices and utilized its New York based employees to perform the work under the contracts, and all work under the contracts was performed in New York. Moreover, all witnesses and documents are located in New York (in the EDNY and SDNY). The locus of operative facts are in EDNY and SDNY. This court is familiar with New York law which applies to Star's claims. In the interests of justice, because of all of the foregoing facts, this case should be adjudicated in New York (in this court or in the SDNY).

Under § 1404(a), courts must transfer the entire action, not individual claims. *See JM Smith Corp. v. Astrazeneca Pharms. L P*, 2020 U.S. Dist. LEXIS 143746 (S.D.N.Y. Aug. 11, 2020). Therefore, even assuming *arguendo* that there would otherwise be a basis to transfer the breach of the 4/20/17 Contract claim, the Court cannot transfer solely that claim. When a mandatory forum selection clause governs some, but not all, of the parties or claims in a given case, courts in this district evaluate whether transfer of the remaining claims is appropriate under all of the § 1404(a) factors - both public and private. *Id*. As discussed *supra*, the § 1404(a) factors weigh heavily in favor against transferring venue to the Middle District of Florida.

Accordingly, the entire action, should be litigated in this Court or the SDNY, and Rosenfield's motion to transfer venue to the Middle District of Florida should be denied.

### D. Rosenfield Does Not provide Any Basis For Which the 3/8/19 Contract Can Be Litigated in Florida

Rosenfield does not provide any basis for which the 3/8/19 Contract, which contains a New York choice of law provision, but no forum selection provision, should be transferred. Nor does

Rosenfield provide any argument in connection with the second step for determining if transfer is warranted in connection with the 3/8/19 Contract.

Accordingly, this claim, and the entire action, should be litigated in this Court or the SDNY.

## POINT II

## ROSENFIELD'S MOTION TO DISMISS SHOULD BE DENIED

### A.  New York Law Applies to Star's Claims

The 4/20/17 Contract has a Florida choice of law provision.  The 5/25/17 Contract has no choice of law provision.  The March 8, 2019 Contract has a New York choice of law provision.

Even where there is a choice of law provision contained in a contract (like the 4/20/17 Contract), the law of the jurisdiction with the "most significant contacts" is to be applied with regard to that contract.  *See* Restatement (Second) of Conflicts of Law § 187; *Haag v. Barnes*, 9 N.Y. 2d 554, 559-60, 175 N.E.2d 441, 216 N.Y.S. 2d 65 (1961); *S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F. Supp. 1014 (S.D.N.Y. Oct. 26, 1984) (although contract contained Illinois choice of law provision, where the place of performance of the work was in New York, all negotiations for the extra work and other claims occurred in New York, and plaintiff, a New York corporation, has its principal place of business in New York, and Illinois had no substantial relationship to the parties and New York would seem to have a materially greater interest in the application of its law, court applied New York law); *RLI Ins. Co. v. AST Eng'g Corp.*, 2022 U.S. App. LEXIS 931, *4-5 (2d Cir. Jan. 12. 2022) (New York applies "the law of the place which has the most significant contacts with the matter in dispute"); *Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984) ("Choice of law provisions are not controlling and may be disregarded where the most significant contacts with the matter in dispute are in another State.")

Here, all of the significant contacts are in New York, as Rosenfield previously conceded when it chose to litigate claims with Star in the SDNY concerning the same transactions and occurences as contained in the Amended Complaint.   Indeed, as alleged in the Amended Complaint, on April 30, 2021, in the SDNY Action where Rosenfield sought payment from Star for unpaid fees and wherein Star asserted counterclaims all of which relate to the same transactions and occurrences as the instant action.  Rosenfield is bound by these prior judicial admissions.  *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523 (2d Cir. March 18, 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound").

In addition to Rosenfield's judicial admissions, the facts establish that all of the significant contacts are in New York.  Star is comprised of New York corporations and limited liability entities based in Queens, New York.  (AC ¶¶ 2-9).  Rosenfield has a New York office and utilized its New York based employees to perform all of the work under the contract in New York.  (AC ¶ 24; SDNY case no. 21-cv-03858, ECF Doc. No. 1, ¶ 4).  (Id.)  Accordingly, like in *S. Leo Harmonay*, despite the existence of a choice of law provision in the 4/20/17 Contract, the claims should be governed by New York law because New York has the most significant contacts.

Moreover, "[w]here jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." *Stuart v. American Cyanamid Co.*, 158 F.3d 622 (2d Cir. Sept. 21, 1998); *see also IBM v. Liberty Mut. Ins. Co.,* 363 F.3d 137, 143 (2d Cir. 2004).

The first step in New York's choice of law analysis is "to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Globalnet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 382 (2d Cir. 2006)  An actual conflict exists where there are "relevant substantive differences that could have a significant impact on the outcome of the

case." *Finance One Pub. Co. Ltd., v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005). If a conflict exists, the second step of the analysis is to determine which jurisdiction has the greatest interest in the claim. *Philips Credit Corp. v. Regent Health Group, Inc.*, 953 F.Supp. 482, 502 (S.D.N.Y. 1997) ("[T]he law of the jurisdiction having the greatest interest in the litigation controls."). The place of negotiation and performance are given the heaviest weight in this analysis. *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 135 (2d Cir. 2018); *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1031 (2d Cir. 1996). If no conflict exists, the court should apply the law of the forum. *Alitalia Linee Aeree Italiane v. Airline Tariff Publ. Co.*, 580 F. Supp. 2d 285, 290 (S.D.N.Y. 2008) (citing *Excess Ins. Co. v. Factory Mut. Ins. Co.*, 2 A.P.3d 150, 151, 769 N.Y.S.2d 487 (1st Dep't 2003).

However, "[b]ecause a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage." *Melville v. HOP Energy, LLC*, 2023 U.S. Dist. LEXIS 52101 (S.D.N.Y. March 27, 2023). Even if this Court were to conduct an analysis at this stage, it should conclude that New York law should apply.

The elements for a breach of contract claim under Florida law and New York law are the same. Compare *U.S. Nonwovens Corp. v. Pack Line Corp.*, 48 Misc. 3d 211, 4 N.Y.S.3d 868, 872 (N.Y. Sup. Ct. 2015) ("[T]he elements of a cause of action for breach of contract are (1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, (4) resulting damage.") *with Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)("a cause of action for breach of contract has three elements: (1) a valid contract, (2) a material breach, and (3) damages."

Even if there are substantive differences that could have a significant impact on the outcome of the case (which there are not), as discussed *supra*, New York has the greatest interest in the breach of contract claims.

With regard to the fraud claim, the law where the locus of the tort, which is generally deemed to be the place where the injury was inflicted, rather than where the fraudulent act originated, applies. *See Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 220 (2d Cir. Nov. 15, 2013).

Accordingly, New York law applies to all of the claims and to the statute of limitations for all claims.[3]

### B. Star's Claims Are Not Untimely

New York law applies as discusses *supra*, and when jurisdiction rests upon diversity of citizenship, this Court is required to apply New York's statutes of limitations. *Stuart v. American Cyanamid Co.*, 158 F.3d 622 (2d Cir. Sept. 21, 1998).[4]

---

[3] The 5/25/17 Contract does not contain a choice of law provision. For the reasons discussed *supra*, New York law should apply to that contract. Rosenfield does not argue that New York law does not apply to the 3/8/19 contract because the 3/8/19 Contract includes a New York choice of law provision. (AC ¶ 61).

[4] While C.P.L.R. § 202 provides an exception, that exception applies when a nonresident plaintiff sues upon a cause of action that arose outside of New York in which case the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued. *See* N.Y. C.P.L.R. § 202 . *Id.* at 627. New York follows "the traditional definition of accrual -- a cause of action accrues at the time and in the place of the injury." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 715 N.E.2d 482, 485, 693 N.Y.S.2d 479 (N.Y. 1999). C.P.L.R. § 202 does not apply because Star is not a non-resident plaintiff. Moreover, as discussed *supra*, Rosenfield previously conceded that it provided services for Star from Rosenfield's New York office.

Rosenfield argues that Star's claims for breaches of the 4/20/17 Contract and 5/25/17 Contract (Counts II-IV)[5] and for fraud (Count VI) sound in professional negligence and Florida's two (2) year statute of limitations applies.  This argument must be rejected.

First, as discussed *supra*, New York's (not Florida's) statute of limitations must be applied to Star's claims.

Second, even if Rosenfield is correct that Star's breach of contract claims related to the 4/20/17 Contract and 5/25/17 Contract and Star's fraud claim sound in negligence (which is not the case), Star commenced this action within the three (3) year statute of limitations governing negligence claims under CPLR §§ 214 and 203(e).[6]

As discussed *supra*, on April 30, 2021, Rosenfield commenced an action against Star in the SDNY wherein Star asserted counterclaims which are the same claims they assert in the instant action.  (AC ¶¶ 10-12).  The SDNY action was dismissed on December 19, 2022 due to lack of complete diversity.  (AC ¶ 11).  Star commenced the instant action on May 25, 2023 in state court which was later removed to this Court.  (AC ¶¶ 13-14).

Under CPLR 203(e):

> [where] a defendant has served an answer containing a … counterclaim and the action is terminated … by dismissal …, the time which elapsed between the commencement and termination of the action is not a part of the time within which an action must be commenced to recover upon the claim in the … counterclaim …

CPLR 203(e).

---

[5] Rosenfield does not argue that Star's breach of contract claim related to the 3/8/19 Contract is untimely.

[6] Since these claims are timely under the three (3) year statute of limitations for negligence claims, they certainly are timely applying the six (6) year statute of limitations for breach of contract and fraud claims.

17

Thus, the statute of limitations was tolled during the pendency of the SDNY action under CPLR 203(e).  Only 711 days passed from October 24, 2019 – the date on which Rosenfield argues Star should have become aware of their claims – through May 25, 2023, the date on which Star commenced the instant action (after subtracting the days between April 30, 2021 and December 19, 2022 while the SDNY action was pending).[7]  Accordingly, Star timely commenced these claims, even applying the shorter statute of limitations period for negligence.

### C.   Star's Fraud Claim Is Sufficiently Pled[8]

Rosenfield argues that the claim for fraudulent misrepresentation is insufficiently pled because (i) Star only identifies three fraudulent statements with particularity, two of which are purportedly duplicative and not independent of the breach of contract claim and the third of which is purportedly an unactionable statement of intent to perform; and (ii) Star's scienter allegation only asserts Rosenfield acted with a general profit motive.  Both arguments must be rejected.

First, Star alleges, with particularity, significantly more than three (3) fraudulent statements.  Indeed, AC ¶ 50 contains ten (10) different fraudulent statements made by Rosenfield. Specifically, it alleges that Rosenfield's December 4, 2019 report contained the following false statements:

---

[7] This does not even take into account the 228 days of tolling from March 20, 2020 through November 3, 2020 due to COVID which tolling periods applied to procedural deadlines for commencing, filing, or serving legal actions, notices, motions, or other proceedings under New York statutes, local laws, ordinances, orders, rules, and regulations. See Executive Order No. 202.67 (Oct. 5, 2020); Executive Order No. 202.60 (Sept. 4, 2020); Executive Order No. 202.55 (Aug. 5, 2020); Executive Order No. 202.48 (July 6, 2020); Executive Order No. 202.38 (June 6, 2020); Executive Order No. 202.28 (May 7, 2020); Executive Order No. 202.14 (Apr. 7, 2020); Executive Order No. 202.8 (Mar. 20, 2020)).  See Brash v Richards, 195 AD3d 582 (2d Dept. 2021); Matter of 701 Riv. St. Assoc. LLC, 72 Misc 3d 302 (N.Y. Sup Ct. 2021); Foy v State, 71 Misc 3d 605 (Ct Cl. 2021); see also Wilson v Town of Ulster, 120CV104TJMDJS, 2021 WL 1946485 (N.D.N.Y. May 14, 2021).

[8] Rosenfield argues, without any basis, that Florida law applies to Star's fraud claim.  However, fraud claims under New York law and Florida law have no significant differences.  Estate of Leventhal v. Wells Fargo Bank, N.A., 2015 U.S. Dist. LEXIS 129402 (S.D.N.Y. Sept. 25, 2015).

a. Incorrectly stating that every intercompany check between Star Toyota and Star Nissan was fraudulent despite Rosenfield's knowledge that certain intercompany checks were legitimate;

b. Incorrectly identifying fraudulent schemes;

c. Stating there was theft from Star Auto Group's "factory incentive accounts" but failing to discover either of the two (2) schemes actually committed by Star Auto Group's former employee, Carmen Jones ("Jones"), out of this same account, for which Star Auto Group sued Jones;

d. Incorrectly stating that there were "several suspicious transactions that could result in approximately $206,180.00 of fraudulent activity" related to employee advances. Whereas the first report Rosenfield provided to Star Auto Group on June 2, 2017 contains the same exact sentence, evidencing a copy-and-paste job with poor attention to detail;

e. Incorrectly stating that "there is no record of payment" by Star Auto Group's former employee, Theocharis, receiving an employee advance of $30,000.00, despite Star Auto Group providing Rosenfield with a $25,000.00 check from Theocharis to Star Auto Group, along with a corresponding journal entry;

f. Incorrectly stating that Star Auto Group's current employee, Jacqueline Cutillo, obtained a vehicle through a general journal entry while not identifying other former employees who did in fact have general journal entries corresponding to their vehicle purchase–other than Jones which was originally brought to Rosenfield's attention by Star Auto Group;

g. Failing to provide any additional detail in Rosenfield's December 4, 2019 report regarding "vehicle sales to employees with no documentation of cash receipts" despite mentioning the same information in its June 2, 2017 report;

h. Incorrectly stating that there are vendor numbers with more than one vendor assigned but failing to specifically identify any vendors, including Nissan Motors and Staples, both of which had two separate vendor numbers. (Star Auto Group notified Rosenfield about embezzlement schemes engaged in by their former employees that Star Auto Group uncovered involving these vendors but Rosenfield still failed to include them in its December 4, 2019 report);

i. Failing to include several embezzlement schemes in its December 4, 2019 report which Star Auto Group previously notified Rosenfield, including, but not limited to, a Star Subaru embezzlement scheme involving warranty claims replacing customer deposits. (This embezzlement scheme was originally mentioned in a report by Rosenfield dated May 29, 2018, but was completely omitted from Rosenfield's December 4, 2019 report); and

j. Identifying several embezzlement schemes that were not, in fact, embezzlement schemes.

k.  Star alleges additional misrepresentations, with particularity in ¶ 51 of the AC:

> As another example of the poor quality of Rosenfield's work, on January 24, 2020, a private investigator retained by MLLG met with Ken Rosenfield at Rosenfield's office in Orlando, Florida. During this meeting, Rosenfield provided specific details of Theocharis' improper conduct. On January 26, 2020, the private investigator sent a recap email to Rosenfield and Star Auto Group outlining what was discussed during the meeting on January 24, 2020. One specific issue included in the January 26, 2020 email was that Rosenfield stated that that from approximately 2014 to 2017, cash was being stolen from Metro Chrysler Plymouth Inc. d/b/a Star Chrysler Jeep Dodge's ("Star Chrysler") bank deposits "every day and sometimes twice a day" Rosenfield had billed tens of thousands of dollars in an effort to support that this theft occurred and reconfirmed to the private investigator that this theft was occurring each day during this time period. Rosenfield claimed that its primary evidence that this scheme, in fact, occurred "every day and sometimes twice a day" over a period of years was its examination and analysis of the Star Chrysler's "cash boards". However, Rosenfield never bothered to examine the primary banking and dealership accounting files, specifically the "edit lists". Had Rosenfield taken this basic step, Rosenfield would have seen the precise amount consisting of not only cash, but checks and credit cards, coming into Star Chrysler was in fact deposited every day in Star Chrysler's bank account. When the private investigator presented details of Rosenfield's allegations to Star Auto Group's office manager, she was able to respond to the private investigator the next day with evidence completely debunking Rosenfield's allegation.

Second, Star alleges Rosenfield intentionally made material misrepresentations (AC ¶ 95), Star provides the specific details of the misrepresentations and the dates on which they were made (AC ¶¶ 50-51, 53, 96-99), and alleges that the misrepresentations were made in order to defraud or mislead them.  (AC ¶ 50).  Star alleges they relied on these statements and paid Rosenfield for its work and filed lawsuits in reliance on Rosenfield's misrepresentations.  (AC ¶¶ 56-57).  Star alleges that Rosenfield benefitted by making these misrepresentations as it was paid substantial fees for their work.  (AC ¶ 95).  These detailed allegations are far from merely alleging a general profit motive by Rosenfield.

Star has amended its fraud claim to be pled in the alternative to the breach of contract claim to address Rosenfield's argument that the fraudulent statements are duplicative of the breach of contract claim.

Based on the foregoing reasons, Rosenfield's motion to dismiss should be denied.

## **CONCLUSION**

Based on the foregoing reasons, Star respectfully requests that the Court deny Rosenfield's motion to transfer venue, and in the alternative, Rosenfield's motion to dismiss Star's claims and for all such other and further relief as the Court deems just and proper.

Dated: Lake Success, New York
      November 22, 2023

/s/ Jamie S. Felsen, Esq.
MILMAN LABUDA LAW GROUP PLLC
*Attorneys for Star Auto Sales of Bayside, Inc.*
*d/b/a Star Toyota of Bayside, Star Auto Sales*
*of Queens, LLC d/b/a Star Subaru, Star*
*Hyundai LLC d/b/a Star Hyundai, Star Nissan,*
*Inc d/b/a Star Nissan, Metro Chrysler*
*Plymouth Inc. d/b/a Star Chrysler Jeep*
*Dodge, Star Auto Sales of Queens County LLC*
*d/b/a Star Fiat, and Star Auto Sales of Queens*
*Village LLC d/b/a Star Mitsubishi*
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042
(516) 328-8899
Fax: (516) 328-0082
jamiefelsen@mllaborlaw.com